## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| SHELBERT ABRAHAM, JR., | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No.  06-1281-MLB |
| | ) | |
| HEROES' SPORTS BAR, LLC | ) | |
| d/b/a B.G. BOLTON'S SPORTS GRILL, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This matter comes before the court on defendants' motion for summary judgment (Docs. 86, 87). Defendants are Heroes' Sports Bar, LLC d/b/a B.G. Bolton's Sports Grill ("BGB Sports Grill"),[1] Gates Enterprises, Inc. ("Gates Enterprises"), and Walter E. Gates ("Mr. Gates"). Plaintiff Shelbert Abraham opposes the motion (Docs. 92, 93) and the matter has been fully briefed (Doc. 102). The motion is GRANTED for the reasons stated more fully herein.

This is an employment discrimination case filed by plaintiff on September 20, 2006. Plaintiff proceeds pro se. Plaintiff's multiplicious allegations are construed to assert claims for: 1) race and sex discrimination, hostile work environment, discriminatory termination, pay discrimination, and retaliation under Title VII, 42 U.S.C. § 2000e ("Tile VII"); and 2) similar claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621-634(b) ("ADEA"). Defendants move for summary judgment on all plaintiff's claims.

---

[1] The court recently granted plaintiff's motion to amend the case caption to include this correct corporate defendant entity. (Doc. 103.)

## I.   STANDARDS OF LAW

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted); see also Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citing Adler).  The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the factual dispute must be material.  See Renfro v. City of Emporia, 948 F.2d 1529, 1533 (10th Cir. 1991).

Defendant initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  See Adler, 144 F.3d at 670.  Because plaintiff bears the burden of proof at trial, defendant need not "support [its] motion with affidavits or other similar materials negating [plaintiff's]" claims or defenses. Celotex, 477 U.S. at 323 (emphasis in original).  Rather, defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim.  See Adler, 144 F.3d at 671 (citing Celotex, 477 U.S. at 325).

-2-

If defendant properly supports its motion, the burden then shifts to plaintiff, who may not rest upon the mere allegation or denials of its pleading, but must set forth specific facts showing that there is a genuine issue for trial.  See Mitchell v. City of Moore, 218 F.3d 1190, 1197-98 (10th Cir. 2000).  In setting forward these specific facts, plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." Adler, 144 F.3d at 671.  If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted.  See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 533 (10th Cir. 1994).  Plaintiff "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 793 (10th Cir. 1988).  Put simply, plaintiff must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

Certain local rules further govern the presentation of facts and evidence.  Local Rule 56.1 requires the movant to set forth a concise statement of material facts.  D. Kan. Rule 56.1.  Each fact must appear in a separately numbered paragraph and each paragraph must refer with particularity to the portion of the record upon which the defendant relies.  See id.  The opposing memorandum must contain a similar statement of facts.  Plaintiff must number each fact in dispute, refer with particularity to those portions of the record upon which he relies and, if applicable, state the number of the

defendants' fact that he disputes.  The court may, <u>but is not</u> <u>obligated to</u>, search for and consider evidence in the record that would rebut the defendant's evidence, but that plaintiff has failed to cite.  See <u>Mitchell</u>, 218 F.3d at 1199; <u>Adler</u>, 144 F.3d at 672.  All material facts set forth in the statement of defendant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of plaintiff.  See <u>id.</u>; <u>Gullickson v.</u> <u>Southwest Airlines Pilots' Ass'n</u>, 87 F.3d 1176, 1183 (10th Cir. 1996) (applying local rules of District of Utah).  A standing order of this court also precludes drawing inferences or making arguments within the statement of facts.

The parties need not present evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible.  See <u>Thomas v. Int'l Bus. Machs.</u>, 48 F.3d 478, 485 (10th Cir. 1995) (internal quotations and citations omitted).  For example, hearsay testimony that would be inadmissible at trial may not be included.  See <u>Adams</u>, 233 F.3d at 1246.  Similarly, the court will disregard conclusory statements and statements not based on personal knowledge.  See <u>Cole v. Ruidoso Mun. Schs.</u>, 43 F.3d 1373, 1382 (10th Cir. 1994) (regarding conclusory statements); <u>Gross v. Burggraf</u> <u>Constr. Co.</u>, 53 F.3d 1531, 1541 (10th Cir. 1995) (requiring personal knowledge).  Finally, the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e).  See Fed. R. Civ. P. 56(e); D. Kan. Rule 56.1; 10A Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 2722 (2d

ed. 1983) (footnotes omitted).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. See Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

Before analyzing defendants' motion for summary judgment, the court notes plaintiff is not represented by counsel.  It has long been the rule that pro se pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed.  See Hall v. Bellmon, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); Hill v. Corrections Corp. of America, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.  See Hall, 935 F.2d at 1110.  Liberal construction does not, however, require this court to assume the role of advocate for the pro se litigant.  See id.  Plaintiff is expected to construct his own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. See id.; Hill, 14 F. Supp.2d at 1237.  Additionally, the court need not accept as true plaintiff's conclusory allegations because no special legal training is required to recount the facts surrounding alleged injuries.  See Hill, 14 F. Supp.2d at 1237.  Thus, the court

-5-

is required to accept as true only plaintiff's well-pleaded and supported factual contentions.  See id.  In the end, plaintiff's pro se status, in and of itself, does not prevent this court from granting summary judgment.  See Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992).

## II.  FACTS AND PROCEDURAL HISTORY

The following facts are either uncontroverted or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff.  See Hall v. United Parcel Serv., No. Civ. A. 992467-CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)).  To the extent relevant, the factual disagreements between the parties will be noted.

Plaintiff is a Black male who was employed by BGB Sports Grill from May 31, 2004 until October 3, 2005, when his employment was terminated.  Plaintiff was hired when he was fifty-two years old by Quinn Adkins (a White male), BGB Sports Grill's executive chef.  BGB Sports Grill adopted policies to prevent discrimination and harassment based on sex, race, and age.  Plaintiff received these policies.

During the time plaintiff was employed, 169 employees were on BGB Sports Grill's payroll.  Of those employees, there were: 48 White males, 77 White females, 8 Black males, 2 Black females, 24 Hispanic males, 4 Hispanic females, 1 Asian employee, 5 mixed race employees, and 13 employees over the age of 40.  In total, there were 84 males and 85 females employed by BGB Sports Grill during plaintiff's employment.  The Black male employees were: Gary Bohannon, Richard Gladney, Kedrick James, Terrell Price, Cedric Taylor, William Terrill,

-6-

Robert Tramble, and plaintiff.

On July 11, 2004, plaintiff complained to Adkins about racially charged "gangsta rap" music being played in the kitchen which used the word "nigger" or "nigga." Adkins documented that plaintiff heard other employees, specifically Richard Gladney (a Black male), using the phrase "my nigga," which plaintiff found objectionable. Adkins told plaintiff he would intervene in the playing of music, and promised that he would speak to Gladney. At some point, the radio was removed from the kitchen and no music was played from that point forward.

On August 14, 2004, Adkins documented a complaint by plaintiff that Gladney accused plaintiff of being a homosexual and told him that he should "just quit pretending and come out of the closet." Plaintiff also alleged that Gladney pushed him against a sink in the dish area of the kitchen, but there were no witnesses. Adkins told plaintiff he would investigate and spoke to Gladney. Gladney denied calling plaintiff a homosexual or coming into physical contact with him. Adkins urged the co-workers to treat each other with dignity and respect.

On August 19, 2004, Jon Suddeth (a White male), general manager at BGB Sports Grill, spoke to Gladney about using the word "nigger." Gladney denied that the word was used in a derogatory way. Suddeth instructed Gladney not to say the word.

Four months later, on December 27, 2004, Adkins documented other discussions with plaintiff, including Adkins' efforts to respond to plaintiff's complaints. On December 30, 2004, plaintiff's co-worker Kedrick James (a Black male) went to Suddeth and said he did not agree

with plaintiff's discrimination complaints, that he never felt discriminated against at BGB Sports Grill, and that he had not heard racial epithets used.

On January 26, 2005, Sal San Roman, BGB Sports Grill's kitchen manager, reported to BGB Sports Grill that plaintiff was implying he would get money by suing BGB Sports Grill for discrimination. On January 31, 2005, Suddeth spoke with W. Terrill (a Black male) to investigate whether other Black employees felt discriminated against. Terrill denied the presence of racial discrimination and said he had not heard racial epithets used in the kitchen.

Approximately two months later, on March 18, 2005, plaintiff complained to Brian Robinson (a White male), the manager of BGB Sports Grill, that his hours had been cut from forty hours to fifteen to twenty hours per week. Robinson told plaintiff that the change in hours was due to plaintiff's unwillingness to accept a change in job duties. Robinson asked plaintiff if he had been at a meeting discussing job changes, and whether plaintiff was willing to adjust his job (adding food preparation to dish washing), but plaintiff refused. Because plaintiff refused to add food preparation tasks to his dishwashing job, a new Hispanic male employee who was willing to perform both tasks was given many of plaintiff's hours. Shortly thereafter, on March 20, 2005, Adkins noted that James said he heard plaintiff tell Robinson that James (a Black male) was a witness to race discrimination. James again denied the presence of race discrimination at BGB Sports Grill.

The next week, on March 22, 2005, plaintiff applied for unemployment benefits. That same day, Adkins spoke with Terrill (a

-8-

Black male), who plaintiff claimed was a witness to race discrimination.   Terrill denied the presence of race discrimination at BGB Sports Grill and said plaintiff had solicited his support for a lawsuit against BGB Sports Grill but Terrill told plaintiff he was not interested.

On April 11, 2005, plaintiff filed a discrimination claim with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging race, sex, retaliation, and age discrimination.   Plaintiff alleged that: from June 2004 to April 2004 he was subjected to race discrimination; from September 2004 to April 2005 he was subjected to sex discrimination; he was assigned additional responsibilities in January 2005; he was denied a raise in February 2005 despite a similarly situated Hispanic employee being given a raise; his hours were reduced in March 2005 and given to a similarly situated Hispanic employee; and that from March 19, 2005 to March 20, 2005 he was subjected to derogatory comments regarding his age.

On April 30, 2005, Adkins spoke with San Roman because plaintiff had complained that San Roman said "Lets get it on" in an insulitng way and made an obscene gesture indicating masturbation.   There were no witnesses to the alleged incident.   San Roman denied the incident occurred.   Also on April 30, Adkins documented a discussion with plaintiff regarding plaintiff's negative opinions about other minority employees.

On May 20, 2005, Robinson and Suddeth met with James to investigate plaintiff's administrative agency complaint.   James again reported that there was no discrimination against Black employees at

-9-

BGB Sports Grill.

After the employee who was hired to perform the combined dishwashing/food preparation job moved away, plaintiff was offered the additional duty of food preparation.  Plaintiff accepted the offer and on June 7, 2005 received a pay raise.  Over the course of his employment with BGB Sports Grill, plaintiff's hourly wage was never reduced.  Also on June 7, Robinson continued his investigation of plaintiff's administrative agency complaint by again interviewing Terrill.  Terrill again denied the presence of race discrimination at BGB Sports Grill.  Continuing in July 2005, there were a number of difficulties between plaintiff and his co-workers.

On October 3, 2005, plaintiff's employment was terminated. Robinson terminated plaintiff's employment because he believed plaintiff had made false accusations of illegal drug use against Robinson and another employee.  At the time plaintiff was fired, he was fifty-three years old.  Both Terrill (age fifty) and John Schyler (age fifty-nine) were working at BGB Sports Grill at the time plaintiff was fired.

On October 24, 2005, plaintiff filed another complaint with the KHRC and EEOC.  In his October administrative agency complaint, plaintiff alleged that: from June 2005 through August 2005 he was subjected to harassment, and that his employment was terminated in retaliation for his previous complaint.

Plaintiff alleges that there was "no minute or hour that was absent of [the word 'nigger's'] use" and alleges Gladney was "perpetually relentless" in his "sexual agenda" toward plaintiff. Plaintiff also adamantly disputes that he denied accepting the

-10-

additional responsibility of food preparation.  However, none of these assertions by plaintiff are supported by admissible evidence and are not made by plaintiff in a sworn affidavit.

Plaintiff filed suit against "B.G. Bolton's Grille & Bar[,] Gates Enterprises[,] William Gates" on September 20, 2006.  There is no "William Gates" connected with defendants.  Plaintiff did not timely serve process on Walter Gates, the owner of Gates Enterprises and principal owner of BGB Sports Grill.  Mr. Gates did not manage BGB Sports Grill--he hired Suddeth as general manager.  Mr. Gates took no part in the hiring, work assignment, discipline, or firing of plaintiff.  Mr. Gates does not remember getting any complaints from plaintiff, orally or in writing, about race, sex, or age discrimination at BGB Sports Grill.  Mr. Gates did sign plaintiff's paycheck.

The court previously discussed plaintiff's claims at length in an order on a motion to dismiss filed by some of the defendants.  The court ruled on Mr. Gates' motion to dismiss for insufficient service of process.  After discussing Federal Rule of Civil Procedure 4 and Kansas Statutes §§ 60-303(d) and 304(a), the rule and statutes governing service of process on an individual, the court ruled that plaintiff should be given a permissive extension of time to effect service on Mr. Gates.  The court gave plaintiff thirty days to serve Mr. Gates and stated that no further extensions would be granted. (Doc. 67 at 4-7.)  The parties dispute whether Mr. Gates was subsequently properly served.

The court also ruled on the motion to dismiss on the basis that Gates Enterprises and Mr. Gates individually are not "employers" under

-11-

Title VII or the ADEA, and thus had no liability for plaintiff's claims.  The court determined that because, under the standards governing a motion to dismiss, it had to view all plaintiff's allegations as true, it could not grant the motion on this basis. (Doc. 67 at 7-8, 10.)  The court finally discussed the motion to dismiss based on plaintiff's alleged failure to exhaust administrative remedies (Doc. 67 at 8-10), an issue that is not pertinent to the court's discussion herein.

After defendants filed the motion for summary judgment now under consideration, plaintiff filed an "Urgent Motion to Request Tape Recordings be Admitted as Evidence" in support of his response to defendants' motion.  (Doc. 90.)  The court denied plaintiff's motion, sustaining defendants' objections that the tapes had not been authenticated and were inadmissable, and finding that the twenty-two hours of mostly inaudible tape would be burdensome.  (Doc. 100.) Plaintiff thereafter filed a motion for reconsideration of the court's order (Doc. 104) to which defendants responded (Doc. 107) and plaintiff replied (Doc. 108).

The court denies plaintiff's motion for reconsideration for the same reasons stated in its prior order.  Plaintiff has stated no appropriate basis for reconsideration of the court's order.  See D. Kan. Rule 7.3(b) (stating that motions for reconsideration should be "based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice").  Plaintiff states reconsideration is warranted "in the interest of justice," but does no more than reargue positions the court previously rejected.

-12-

### III.  ANALYSIS

### A.  Mr. Gates' Motion

Mr. Gates moves for summary judgment on plaintiff's claims against him on several bases: 1) insufficient service of process; 2) that naming an individual defendant is redundant under Title VII and the ADEA when the corporate employer is also a named defendant; and 3) he does not qualify as an "employer" upon which liability can be imposed.  (Doc. 87 at 11-13.)  Plaintiff responds first by stating that Mr. Gates is a proper defendant because Mr. Gates signed his paycheck.  Plaintiff then contends that process was properly and timely served upon Mr. Gates and that Mr. Gates has had actual knowledge of the suit against him.  Plaintiff finally argues that because of Mr. Gates ownership interest in BGB Sports Grill, he should remain as a defendant.  (Doc. 93 at 24-26.)

The court need not address all the asserted bases for dismissal.  Title VII imposes liability on an <u>employer</u> for violations of its tenets.  The Tenth Circuit has stated that, under Title VII, "statutory liability is appropriately borne by employers, not individual supervisors."  <u>Haynes v. Williams</u>, 88 F.3d 898, 901 (10th Cir. 1996).  The <u>Haynes</u> court also stated that "personal capacity suits against individual supervisors are inappropriate under Title VII."  <u>Id.</u>  The Tenth Circuit's discussion of this issue in a recent unpublished decision is especially relevant.

> The court has repeatedly held that personal capacity suits against individual supervisors are inappropriate under Title VII, which is directed, rather, to the plaintiff's employer.

> . . .
>
> Indeed, whether supervisors are subject to suit
> under Title VII is a matter of jurisdiction,
> since it concerns who qualifies as an 'employer'
> under the statute.  . . .
>
> . . .
>
> As the district court noted, supervisors may be
> named in their official capacity and/or as alter
> egos of the employer, but just as a means to sue
> the employer, . . . and this procedural mechanism
> is superfluous where, as here, the employer is
> already subject to suit directly in its own name.

Lewis v. Four B Corp., 211 Fed. Appx. 663, 665, 665 n.1, 665 n.2 (10th

Cir. 2005) (internal quotations and citations omitted).  Plaintiff's

ADEA claims against Mr. Gates are similarly inappropriate.  See Butler

v. City of Prairie Village, Kan., 172 F.3d 736, 744 (10th Cir. 1999)

(listing cases).

    Therefore, even if Mr. Gates was plaintiff's supervisor, a point

which is far from established, the suit against him as an individual

would be improper.  The true employer, BGB Sports Grill, has been

named as a defendant and a suit against Mr. Gates is "inappropriate"

and "superfluous."  Mr. Gates' motion for summary judgment on all

plaintiff's claims is granted.

## B.  Gates Enterprises' Motion

    Gates Enterprises moves for summary judgment on the claims made

against it on the basis that it, as the parent corporation of BGB

Sports Grill, carries no liability for claims made against the

subsidiary corporation under Title VII or the ADEA.  (Doc. 87 at 13-

14.)  Plaintiff responds that Gates Enterprises is the proper employer

corporate defendant.  Plaintiff alleges no evidence in this regard,

however, to attempt to create a genuine, material factual issue.

-14-

(Doc. 93 at 27.)

Gates Enterprises is correct in its position that its status as a related corporation to plaintiff's employer is insufficient to establish that it is an employer for purposes of Title VII or ADEA liability.   In _Lockard v. Pizza Hut, Inc._, 162 F.3d 1062, 1070-71 (10th Cir. 1998), the Tenth Circuit stated that a plaintiff has the burden of proving that a corporate entity is his employer.   The _Lockard_ court stated that even under the most lenient test defining whether an entity is an employer, the plaintiff must show that the entity "made the final decisions regarding employment matters related to the person claiming discrimination."   _Id._ (internal quotation omitted).

Plaintiff has alleged no facts showing how Gates Enterprises made _any_ decisions related to his employment with BGB Sports Grill. Plaintiff has failed to meet his burden.   As a result, Tenth Circuit precedent requires that this court grant Gates Enterprises' motion for summary judgment on all plaintiff's claims.

## C.   BGB Sports Grill's Motion

BGB Sports Grill moves for summary judgment on all plaintiff's claims against it, contending that plaintiff has not created a genuine issue of material fact and that it is entitled to judgment as a matter of law.   Plaintiff alleges multiple claims against his employer; the court will address each in turn.

### 1.   Plaintiff's Disparate Treatment Claims Under Title VII

Title VII prohibits an employer from discriminating against an employee based on race or sex in the terms and conditions of employment.   42 U.S.C. § 2000e-2(a)(1).   To establish a prima facie

-15-

case of disparate treatment in violation of Title VII, a plaintiff must show: 1) he is a member of a protected class; 2) he was subjected to an adverse employment action; and 3) employees who were not members of the protected class were treated more favorably. <u>Dunlap v. Kan. Dep't of Health and Env't</u>, 127 Fed. Appx. 433, 437 (10th Cir. 2005) (race); <u>see also</u> <u>Paloni v. City of Albuquerque Police Dep't</u>, Nos. 05-2131, 05-2338, 2006 WL 3791286, at *3 (10th Cir. Dec. 27, 2006) (citing <u>Trujillo v. Univ. of Colo. Health Sci. Ctr.</u>, 157 F.3d 1211, 1215 (10th Cir. 1998)) (sex).

     If plaintiff establishes his prima facie case, the burden shifts to BGB Sports Grill to articulate a legitimate nondiscriminatory reason for the adverse employment action.  If BGB Sports Grill does so, the burden shifts back to plaintiff to show that BGB Sports Grill's stated justification is pretextual. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973).  Therefore, only if plaintiff establishes his prima facie case and shows there is reason to believe the employer's reasons are pretextual should BGB Sports Grill's motion for summary judgment fail and the case be submitted to the jury. There is no dispute that plaintiff is a Black male and is a member of a protected class.

     For the second prong of the Title VII disparate treatment case, there must be an adverse employment action. <u>Hillig v. Rumsfeld</u>, 381 F.3d 1028, 1033 (10th Cir. 2004).  The Tenth Circuit has "a liberal standard as to what constitutes an adverse employment action." <u>Dunlap</u>, 127 Fed. Appx. at 437.  A "mere inconvenience or an alteration of job responsibilities" is not sufficient to be considered an adverse employment action. <u>Sanchez v. Denver Pub. Schs.</u>, 164 F.3d 527, 532

(10th Cir. 1998).  Rather, "the employer's conduct must be materially adverse to the employee's job status," which means the conduct must be "a significant change in employment status, such as . . . firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1213 (10th Cir. 2003).

Plaintiff alleges that the reduction of his work hours from forty hours per week to fifteen to twenty hours per week was an adverse employment action.  BGB Sports Grill does not address whether this reduction in work hours was a materially adverse employment action, but moves to the third prong of the prima facie case: whether plaintiff has shown that non-Black employees were treated more favorably than plaintiff.  The court finds that plaintiff has satisfied his second prima facie element: a reduction by half of work hours is more than a mere inconvenience, it is a significant change in employment status.  Hillig, 381 F.3d at 1033.

To establish the final element for a prima facie case of disparate treatment, plaintiff must show that employees who were not members of the defined protected class were treated more favorably by BGB Sports Grill.  Plaintiff must establish that he was "similarly situated to [the co-employee treated differently] in all relevant respects."  McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006).

> Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.  In determining whether two employees are similarly situated, a court should

-17-

> also   compare   the   relevant   employment
> circumstances, such as work history and company
> policies, applicable to the plaintiff and the
> intended comparable employees.

Id. at 745 (internal citations omitted).   In McGowan, the Tenth
Circuit found two co-employees were not similarly situated where the
co-employees had different job responsibilities, were "not subject to
the same policies, statutes and findings of wrongdoing," and had
different levels of culpability in an underlying incident that caused
the alleged adverse employment action.   Id.

Plaintiff fails to identify any similarly situated employee who
was treated more favorably.   Plaintiff does identify one Hispanic
employee who was given more hours after plaintiff's hours were cut.
However, this employee worked more hours because he performed more job
duties, so he does not qualify as similarly situated.   McGowan, 472
F.3d at 745.   Plaintiff alleges one additional instance of race
discrimination: that he was denied a raise and that a similarly
situated Hispanic employee was given the raise instead.   Plaintiff
supplies absolutely no facts to support this allegation, and BGB
Sports Grill establishes facts showing that the reason the Hispanic
employee was paid more was because that employee was performing
additional job duties.   Plaintiff does nothing to dispute this.

Plaintiff has failed to meet his burden of establishing a prima
facie case of disparate treatment discrimination.   Plaintiff
subjectively believes that BGB Sports Grill's treatment of him was
because of his race or his sex, but this subjective belief is
irrelevant.   Aramburu v. Boeing Co., 112 F.3d 1398, 1408 n.7 (10th
Cir. 1997)("[S]ubjective belief of discrimination is not sufficient

-18-

to preclude summary judgment."). Plaintiff's claim therefore fails.

## 2. Plaintiff's Hostile Work Environment Claim

In evaluating a claim based on a hostile work environment, a court must inquire whether "the workplace is permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations and alterations omitted). The alleged harassment must be based on a protected characteristic, such as race or sex. See Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994) ("General harassment if not racial or sexual is not actionable.").

A plaintiff can show that harassment is severe or pervasive enough to implicate Title VII if he satisfies a two-part test. Specifically, plaintiff must show 1) the conduct "create[d] an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive" and 2) he "subjectively perceive[d] the environment to be abusive." Harris, 510 U.S. at 21. "[D]etermining whether an actionable hostile work environment claim exists" requires an examination of "all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (quotations omitted). Accordingly, to survive summary judgment, plaintiff is required to present sufficient evidence from which a reasonable jury could find that BGB

Sports Grill's conduct created both an objectively and subjectively hostile work environment.  See Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998).

Regarding plaintiff's claim of a racially hostile work environment, there are two instances that plaintiff alleges helped create an objectively hostile work environment: 1) "gangsta rap" music played in BGB Sports Grill's kitchen which plaintiff perceived as racially charged because it used the term "nigger" or "nigga"; and 2) a fellow Black employee using the phrase "my nigga" toward other employees.  Plaintiff also alleges that the word "nigger" was frequently used at BGB Sports Grill, both directed toward him and in general conversation.  As the court noted above, however, this allegation by plaintiff is no more than an allegation.  There is no factual evidence or sworn testimony to this effect.[2]

---

[2]  Plaintiff's pro se status does not excuse his deficiencies in supporting his allegations.  Plaintiff has repeatedly been advised of his responsibility to comply with the court's local rules and the Federal Rules of Civil Procedure.  See Docs. 10 at 3; 67 at 2; 85 at 2-3; 89 at 1; 100 at 1.
    Therefore, the court cannot consider plaintiff's conclusory averments.  See Barnes v. United States, 173 Fed. Appx. 695 (10th Cir. 2006) (affirming a grant of summary judgment for the defendant when the pro se plaintiff had notice of the existence of local rules and the Federal Rules of Civil Procedure but did not support his unsworn statements with an affidavit); Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1150-51 (10th Cir. 2006) ("At the summary judgment stage, merely pointing to an unsworn complaint is not enough.  A plaintiff has an obligation to present some evidence to support the allegations; mere allegations, without more, are insufficient to support summary judgment.  The plaintiff must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.  Unsubstantiated allegations carry no probative weight in summary judgment proceedings.") (internal quotations and citations omitted); Woods v. Roberts, No. 94-3159, 1995 WL 654457, *3 (10th Cir. 1995) (affirming dismissal because the pro se plaintiff's "claims are nothing more than conclusory allegations devoid of any factual support.  Plaintiff was required to set forth

Considering all the circumstances, the factual record does not show incidents that were frequent or severe, and thus cannot establish a prima facie case of hostile work environment. While these two incidents may be overtly racial, there is no evidence that they were frequent occurrences. Similarly there is no evidence that they were physically threatening, or that they unreasonably interfered with plaintiff's work performance. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002) (determining whether an actionable hostile work environment claim exists requires an examination of "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance").

In addition, neither the "gangsta rap" music nor Gladney's words were directed at plaintiff. If plaintiff's description is credited, the music and offensive words were the way his young Black co-workers interacted. Plaintiff claims he was told by one Black co-worker that the term "nigger" is "in vogue" and "why don't you just roll with it, accept it, you can't change it, [it's] the wave of the time, this generation right now!!!" Plaintiff does not allege that White co-workers used racially-offensive language. Far more would be required in order to survive BGB Sports Grill's motion for summary judgment. See Bolden v. PRC Inc., 43 F.3d 545 (10th Cir. 1995) (affirming grant of summary judgment for the employer on allegations of two incidents of overtly racial discrimination and twenty incidents of race-neutral

facts supporting his claims.").

-21-

conduct during the employees last eighteen months of employment); Hicks v. Gates Rubber Co., 928 F.2d 966 (10th Cir. 1991) (affirming trial court's ruling for the employer on allegations of nine incidents of harassment over a period of eight months).

No reasonable jury could find from the relevant evidence that plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of his employment" in regards to plaintiff's race. Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257, 1261 (10th Cir. 1998). Regarding an allegation of a racially hostile work environment, the Tenth Circuit recently stated in Herrera v. Lufkin Indus., 474 F.3d 675, 680 (10th Cir. 2007), that "[a] plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments." (internal quotation omitted). This makes it clear that to survive summary judgment on a hostile work environment claim, a genuine issue of material fact must exist as to a consistently offensive environment.[3]

---

[3] At first glance, Herrera, a case that found sufficient factual dispute of a racially hostile work environment to survive a motion for summary judgment, could be read as factually similar and controlling Tenth Circuit precedent. Upon a closer reading, however, the differences are manifest.

In Herrera, the plaintiff presented evidence of several discrete incidents of racial harassment occurring over four years. The plaintiff also produced evidence, however, of ongoing harassment throughout the four-year period, with evidence of racial slurs being used every two to three days. 474 F.3d at 680-81. Here, there is no evidence of the continuous use of racial epithets directed at plaintiff, but a mere unsubstantiated allegation that a racial epithet was generally used in and around plaintiff's work environment and one allegation of a co-worker using a racial epithet toward other

Regarding plaintiff's claim of a sexually hostile work environment, plaintiff alleges two incidents: the factual record shows that plaintiff reported that he was called a homosexual and pushed against a sink by a co-worker and that the same co-worker stated "Lets get it on" to plaintiff while making an obscene gesture.[4]   As discussed above with respect to plaintiff's allegation of a racially hostile work environment, these incidents, assuming they occurred do not rise to the level necessary for plaintiff's claim to proceed. Plaintiff has not shown that the alleged conduct was severe or pervasive such that it created an abusive work environment.[5]   The acts, in total, do not show a pervasive use of gender-based discrimination such that the conduct would unreasonably interfere with plaintiff's work environment.  The allegations are limited in number, occurred infrequently, and were not severe.  See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998) (stating that when evaluating allegations of a hostile work environment claim for severity and pervasiveness, courts should "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional

---

employees.

[4]   Plaintiff also alleges that the same co-worker was "relentless" with sexual advances directed toward plaintiff, but again, this is an unsubstantiated allegation, with no factual support.

[5]   The court realizes that "the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is 'quintessentially a question of fact.'"  O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1098 (10th Cir. 1999).  However, when a plaintiff makes allegations which, even if believed by a jury, could not constitute a severe and hostile work environment, the court may enter summary judgment against the plaintiff.

teasing).

The cases within the Tenth Circuit require far more than plaintiff has alleged to survive a motion for summary judgment. See, e.g., Carrasco v. Boeing Co., 190 Fed. Appx. 650 (10th Cir. 2006) (affirming grant of summary judgment on hostile work environment claim based on sex (allegations of four harassing statements) because no rational jury could conclude that these statements, made over a one-year period, caused the plaintiff's workplace to be permeated with discriminatory intimidation, ridicule and insult); Penry v. Fed. Home Loan Bank of Topeka, 155 F.3d 1257 (10th Cir. 1998) (affirming grant of summary judgment on hostile work environment claim based on sex (allegations of one gender-based comment and four acts of unwanted physical contact regarding one female employee and four gender-based comments regarding another female employee) because the alleged incidents were isolated, took place over a four-year period, and many of which did not occur because of the plaintiff's sex); Gross v. Burggraf Const. Co., 53 F.3d 1534, 1547 (10th Cir. 1995) (affirming a grant of summary judgment where the plaintiff alleged crude and rough comments used by the employer in reprimanding and motivating, because the comments were not related to the plaintiff's gender); see also Braden v. Cargill, Inc., 176 F. Supp. 2d 1103, 1113 (D. Kan. 2001) (granting summary judgment on a hostile work environment claim where the plaintiff alleged only acts that could be considered inappropriate but were not sufficient to unreasonably interfere with the plaintiff's work performance).

In addition, and as an alternate basis for granting defendant's motion on plaintiff's hostile work environment claims, BGB Sports

-24-

Grill promptly investigated the alleged incidents at the time they were reported and took remedial action to stop future events.  See Duncan v. Manager, Dep't of Safety, City, & County, 397 F.3d 1300, 1310 (10th Cir. 2005).  "An employer is absolved of liability for acts of harassment by its employees if it undertakes remedial and preventive action reasonably calculated to end the harassment.  If the employer's response ends the harassment by the employee in question, we presume that the remedial action was sufficient.  Where the response is not effective, we examine the timing of the employee's complaint, the speed of the employer's response, and the gravity of the punishment relative to the alleged harassment."  Id.; cf. Hicks v. Gates Rubber Co., 833 F.2d 1406, 1418 (10th Cir. 1987) (noting that liability exists when the employer either knew or should have known of the harassment and failed to take prompt remedial action).

The record is clear that each time plaintiff complained to management about the alleged harassment, prompt remedial action was taken.  With regard to the racial harassment complaints, plaintiff spoke with Adkins, his supervisor, about his co-worker Gladney's use of the word "nigger" and the "gangsta rap" music being played in the kitchen.  Adkins spoke to Gladney, told Gladney to cease using the word, and the radio was removed from the kitchen.  The general manager of BGB Sports Grill also instructed Gladney not to use the word.

With regard to the sexual harassment complaints, plaintiff spoke with Adkins about Gladney pushing him against a sink and calling him a homosexual.  Again, Adkins spoke with Gladney.  Gladney denied the allegation, there were no witnesses, and Adkins urged the co-workers to treat each other with dignity and respect.  When plaintiff

-25-

complained to Adkins that his co-worker had made an obscene gesture and stated "lets get it on" to plaintiff, Adkins spoke to the co-worker about the incident.

BGB Sports Grill's response to plaintiff's complaints was adequate.  For the two later incidents, when the co-workers who were alleged to have acted discriminatorily denied the allegations and there were no witnesses, BGB Sports Grill still counseled the co-workers to modify their behavior.  For the first incident, the co-worker was instructed to cease use of the offensive word, and the radio was removed from the kitchen.  As a result, BGB Sports Grill is "absolved of liability."  This is an alternate basis for granting BGB Sports Grill's motion for summary judgment on plaintiff's hostile work environment claims.

### 3.  Plaintiff's Race Discrimination in Termination Claim Under Title VII

Title VII declares it unlawful for an employer "to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The summary judgment framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), discussed above, applies to discrimination claims made pursuant to Title VII.  As stated above, "[u]nder the McDonnell Douglas framework, the plaintiff must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.  Once the plaintiff has established a prima facie case, the burden must then shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action.  If the defendant makes this showing, the plaintiff must then show that

-26-

the defendant's justification is pretextual." Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1226 (10th Cir. 2000) (internal quotations and citations omitted).

To establish a prima facie case of race discrimination under Title VII based on a discharge, a plaintiff must show: "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." Salguero v. City of Clovia, 366 F.3d 1168, 1175 (10th Cir. 2004). Plaintiff is a member of a protected class and the undisputed facts show that plaintiff was terminated after he repeatedly alleged his manager and co-worker were users of illegal drugs.

Even if the facts were sufficient to establish a prima facie case, BGB Sports Grill has met its burden of articulating a legitimate, nondiscriminatory reason for termination of plaintiff's employment, and plaintiff has not shown that BGB Sports Grill's justification is pretextual. BGB Sports Grill contends that plaintiff was terminated based on his false allegations of drug use against his manager and co-worker, a justification that is not racially motivated. "Typically, a plaintiff may show pretext in one of three ways: (1) with evidence that defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances; or (3) with evidence that . . . he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004)

-27-

(internal quotation omitted).  Plaintiff has put forth no evidence at all to show how BGB Sports Grill's articulated reason for terminating his employment was pretextual.  As a result, BGB Sports Grill's motion for summary judgment on plaintiff's discrimination in termination claim is granted.

### 4.  Plaintiff's Retaliation Claims

Title VII also applies to allegations of retaliation.  It is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice" or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. . . ."  42 U.S.C. § 2000e-3(a).  The McDonnell Douglas burden shifting framework also applies to claims of retaliation under Title VII.  Antonio v. Sygma Network, Inc., 458 F.3d 1177, 1180-81 (10th Cir. 2006).  To establish a prima facie case of retaliation, plaintiff must show: 1) he engaged in protected opposition to discrimination; 2) a reasonable employee would have found the challenged action materially adverse; and 3) there exists a causal connection between plaintiff's protected activity and the materially adverse action.  Somoza v. Univ. of Denver, ___ F.3d ___, 2008 WL 162764, at *3 (10th Cir. Jan. 18, 2008).  Plaintiff's second administrative agency complaint, filed on October 24, 2005, alleged that his employment was terminated in retaliation for plaintiff filing his first administrative agency complaint.

There is no dispute that plaintiff's filing of his first administrative agency complaint is "protected opposition to discrimination."  And there is also no dispute that termination of plaintiff's employment would be materially adverse to a reasonable

-28-

employee.  See Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1316 (10th Cir. 2006).  BGB Sports Grill disputes the third prong of plaintiff's prima facie case: that there exists a causal connection between plaintiff's administrative agency complaint and termination of his employment.

In order to show a causal connection, the employer must have been aware of the employee's protected activity and the plaintiff must establish that knowledge.  See, e.g., Petersen v. Utah Dep't of Corrs., 301 F.3d 1182, 1190 (10th Cir. 2002) (stating that "an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII" and finding that causation was not established on a denial of promotion adverse employment action claim because no one in the decisionmaking process "even knew of her protected opposition").  This element has clearly been met as BGB Sports Grill investigated plaintiff's allegations made in his administrative agency complaint.

The required link between the protected activity and subsequent adverse employment action can then be inferred if the action occurs within a short period of time after the protected activity.  see McGowan v. City of Eufala, 472 F.3d 736, 744 (10th Cir. 2006) ("[T]he required link between the protected activity and subsequent adverse employment action can be inferred if the action occurs within a short period of time after the protected activity.")  However, "[u]nless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."  Id.; Piercy v. Maketa, 480 F.3d 1192, 1198 (10th Cir. 2007) ("A retaliatory motive may be inferred

-29-

when an adverse action closely follows protected activity. However, unless the termination is <u>very closely</u> connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." (quoting <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999))).

Plaintiff filed his administrative agency complaint on April 11, 2005 and his employment was terminated on October 3, 2005. Almost six months passed between the filing of his complaint and his firing. This time period is insufficient to support an inference of a causal connection. <u>See Anderson</u>, 181 F.3d at 1179 ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation."). In addition, after the employee who was hired to perform the combined dishwashing/food preparation job moved away, plaintiff was offered the additional duty of food preparation. Plaintiff accepted the offer and on June 7, 2005, during the six month time period between the filing of his first administrative agency complaint and the termination of his employment, he received a pay raise.

Thus, the time period is too large to support an inference of a causal connection, and plaintiff has offered no additional support of a causal connection between the two occurrences. <u>See Piercy v. Maketa</u>, 480 F.3d at 1198 (stating that "the passage of time does not necessarily bar a plaintiff's retaliation claim if <u>additional</u> evidence establishes the retaliatory motive"); <u>Antonio</u>, 458 F.3d at 1181 ("An employee may establish the causal connection by proffering evidence

of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.  But unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." (internal quotations and citations omitted)).

However, even assuming the court inferred causation or found that plaintiff had proffered evidence establishing causation, as discussed above, BGB Sports Grill has offered a legitimate nondiscriminatory justification for its actions.  BGB Sports Grill contends that plaintiff's employment was terminated because of plaintiff's allegations against his manager and co-worker of illegal drug use. Plaintiff has offered no plausible pretext for this justification. Defendant's motion for summary judgment on plaintiff's retaliation claim is granted.[6]

### 5.  Plaintiff's Claims Under the ADEA

Plaintiff's claims under the ADEA can be dealt with in a more summary fashion.  Plaintiff alleged in his first administrative agency complaint that he was subjected to derogatory comments about his age.

---

[6]  It is possible that plaintiff also contends the reduction of his work hours was done in retaliation for his complaints to management because he checked the box for retaliation in his first administrative agency complaint.  See Robbins v. Jefferson County Sch. Dist. R-1, 186 F.3d 1253, 1258 (10th Cir. 1999) (holding that informal complaints to superiors or the use of the employer's internal grievance procedures constitutes protected activity under Title VII). However, plaintiff has not alleged a causal connection between his complaints and the reduction of his work hours, and as discussed above BGB Sports Grill has articulated a legitimate, nondiscriminatory justification for the reduction of plaintiff's hours.  Plaintiff has not shown that BGB Sports Grill's justification is pretextual, and a retaliation claim based on this allegation fails as well.

The ADEA "broadly prohibits arbitrary discrimination in the workplace based on age." Lorillard v. Pons, 434 U.S. 575, 577 (1978) (citing 29 U.S.C. § 623(a)).

A plaintiff can prove an age discrimination claim by presenting either direct or indirect evidence of discrimination. Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1136 (10th Cir. 2000). Because plaintiff has alleged no direct evidence of age discrimination, the court must determine whether he has provided indirect evidence of discrimination by utilizing the McDonnell Douglas framework. Stone, 210 F.3d at 1137. Under this framework, plaintiff has the burden to present evidence of a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If the employee is successful in doing so, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id.

A prima facie case of age discrimination requires plaintiff to show: 1) he was within the protected age group; 2) he suffered an adverse employment action; and 3) he was treated less favorably than others not in the protected age group. See Sanchez v. Denver Public Sch.s, 164 F.3d 527, 531 (10th Cir. 1998) (citing cases). There is no dispute that plaintiff's age places him in the protected age group.

However, plaintiff has done no more than make a generic claim of "derogatory comments regarding his age." There is no factual record supporting this claim. For this reason, and the reasons discussed above with regard to plaintiff's Title VII claims, plaintiff's ADEA claims fail. As a result, defendant's motion for summary judgment on plaintiff's age discrimination claims is granted.

**IV.  CONCLUSION**

Plaintiff's motion for reconsideration (Doc. 104) of the court's order regarding plaintiff's proposed tape recording evidence is DENIED for the reasons stated more fully herein.

Defendants' motion for summary judgment (Doc. 86) is GRANTED for the reasons stated more fully herein.  The clerk is directed to enter judgment for defendants pursuant to Rule 58.

A motion for reconsideration of this order is not encouraged. Any such motion shall not exceed 3 double-spaced pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>, 810 F. Supp. 1172, 1174 (1992).  The response to any motion for reconsideration shall not exceed 3 double-spaced pages.  No reply shall be filed.

IT IS SO ORDERED.

Dated this   26th   day of February 2008, at Wichita, Kansas.


s/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE